## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **ROBYN ANN COTUGNO** <br> **1354 Union Street** <br> **Schenectady, NY 12308** | * <br> <br> * | |
| *Plaintiff,* | * | |
| v. | * | **Civ. Action No.** 1:16-CV-902 (DNH/DEP) |
| **U.S. EQUITIES CORP.** <br> **955 S. Springfield Ave, Ste. 2407** <br> **Springfield, NJ 07088** | * <br> <br> * | |
| Serve on: | * | |
| **Linda Strumpf, Esq.** <br> **244 Colonial Rd.** <br> **New Canaan, CT 06840** | * <br> <br> * | |
| **LINDA STRUMPF, ESQ.** <br> **244 Colonial Road** <br> **New Canaan, CT 06840** | * <br> <br> * | |
| Serve on: | * | |
| **Linda Strumpf, Esq.** <br> **244 Colonial Rd.** <br> **New Canaan, CT 06840** | * <br> <br> * | |
| **HAL SIEGEL** <br> **244 Colonial Road** <br> **New Canaan, CT 06840** | * <br> <br> * | |
| Serve on: | * | |
| **Hal Siegel** <br> **244 Colonial Rd.** <br> **New Canaan, CT 06840** | * <br> <br> * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

1

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Robyn A. Cotugno ("Ms. Cotugno") by and through undersigned counsel and for her Complaint against the U.S. Equities Corp., Linda Strumpf, Attorney at Law, and Hal Siegel, alleges as follows:

**INTRODUCTION**

1.  Plaintiff Robyn A. Cotugno brings this action seeking redress for the illegal practices of defendants U.S. Equities Corp. ("U.S. Equities"), Linda Strumpf, Esq. ("Strumpf"), and Hal Siegel ("Siegel") in connection with the collection of debts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), New York General Business Law § 349 ("NYGBL"), and for common law Libel.

2.  Ms. Cotugno seeks statutory damages, actual damages, attorneys' fees, and costs, pursuant to the FDCPA, the NYGBL and the common law of Libel.

3.  The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress also found that existing laws and procedures for redressing debt collection activities were inadequate to protect consumers. 15 U.S.C. § 1692(b). Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15

U.S.C. § 1692(e).

4.     The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

5.     The FDCPA is a strict liability statute that provides for actual or statutory damages upon the showing of one violation. The Fourth Circuit and other federal courts have held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988). The purpose of the least-sophisticated consumer standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Services, Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d at 1318).

6.     The FDCPA is a remedial statute that is construed liberally in favor of the debtor. *See, e.g., Garcia-Contreras v. Brock & Scott, PLLC*, 775 F.Supp.2d 808 (M.D.N.C. 2011); S*prinke v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006);

*Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is conferred by 15 U.S.C. § 1692k(d), 28 U.S.C. 1331, and 28 U.S.C. § 1367.

8. The Plaintiff is a natural person and resident of the State of New York. She is a "consumer" as defined by 15 U.S.C.A. § 1692a.

9. Defendant U.S. Equities is a New York Corporation registered with the NYS Department of State Division of Corporations, with a Principal Executive Office located at 955 S. Springfield Ave., Ste. 2407, Springfield, NJ, 07088. U.S. Equities also has a business mailing address at 41 West Putnam Avenue, Greenwich, CT 06830.

10. Upon information and belief, Defendant Siegel is the President and Owner of Defendant U.S. Equities.

11. Defendant Strumpf is an attorney licensed to practice in the State of New York with offices at the following locations: 1) 69 Fox Run, South Salem, NY 10590; 2) 224 Colonial Road, New Canaan, CT 06840; and 3) 600 Ashwood Road, Springfield, NJ 07081.

12. The United States District Court for the District of New York is the proper venue pursuant to 28 U.S.C.A. § 1391(b) because the events giving rise to Plaintiff's Complaint occurred in the state of New York. Furthermore, Defendants carry on a regular business of debt collecting in New York.

## PARTIES

4

13. Plaintiff Robyn Cotugno is an individual who is a "consumer" as defined in 15 U.S.C. § 1692a(3) of the FDCPA, as she is a natural person allegedly obligated to pay any debt, in this case alleged payments for a 2009 judgment owned by U.S. Equities Corp.

14. Defendants Strumpf and Siegel meet the definition of "debt collector" contained in FDCPA 15 U.S.C § 1692a(6) because they regularly use the U.S. Mail to collect debts allegedly due to another.

15. U.S. Equities is a "debt collector" as defined by 15 U.S.C. 1692a(6) of the FDCPA because it is a debt buyer regularly engaged in the business of collecting debts due another in the state of New York.

16. Defendant Strumpf is the resident agent for Defendant U.S. Equities, and the address for service of process on U.S. Equities is the same address of Strumpf's home and office—244 Colonial Road, New Canaan, CT 06840. Upon information and belief, at various times relevant to this action, U.S. Equities and Strumpf have also shared office space at 2 West Road, South Salem, New York 10590 and at 111 John Street, New York, New York, 10039.

17. Upon information and belief, Defendant Siegel is the President and Owner of Defendant U.S. Equities. Defendant Siegel is Strumpf's husband. Upon information and belief, at all relevant times, Siegel was also the office manager for Strumpf's firm.

18. Defendant Strumpf is a law firm that engages in the practice of debt collection in multiple states. Strumpf regularly collects debts alleged to be due from another in the State of and uses the U.S. Postal service to do so.

19. At all relevant times, each Defendant acted as a "debt collector" within the

meaning of 15 U.S.C. § 1692a(6). Specifically, Strumpf held itself out to be a law firm collecting a consumer debt allegedly owed by the Plaintiff to U.S. Equities. Defendants mailed a letter, signed by Strumpf, to Ms. Cotugno containing the following disclosure:

> This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

20.     All acts done by Strumpf were done on her own behalf and on behalf of her practice, Linda Strumpf, Attorney at Law, and on behalf of U.S. Equities.

21.     All acts done by Siegel were done on his own behalf and on behalf of Linda Strumpf, Attorney at Law, and on behalf of U.S. Equities.

## FACTUAL ALLEGATIONS

### A.     The Subject Debt

22.     On June 7, 2016, Defendants mailed Ms. Cotugno a letter attempting to collect an alleged debt it identified only as a judgment regarding "U.S. Equities Corp. v. Robyn Cotugno" (hereinafter, "the collection letter"). The collection letter did not disclose the name of the original creditor, the amount of the alleged judgment owed by the Plaintiff, or even the year or court in which the alleged judgment was entered.

23.     Because the collection letter did not contain any information connecting Ms. Cotugno to the alleged debt, and because Ms. Cotugno had never heard of U.S. Equities Corp, she believed the collection letter was part of a scam and disregarded it.

24.     Roughly two weeks after Ms. Cotugno received the collection letter, a doctor from the medical practice operating below the Plaintiff's apartment ("the doctor") approached her as she was leaving for work and informed her that a debt collector had contacted him regarding a judgment against Ms. Cotugno. The doctor operates the medical practice on the first floor of the building, and resides in an

apartment above the medical practice. As Ms. Cotugno recalls, the doctor said, "Good morning, there is an issue you might want to clear up regarding a judgment you had against you in 2009." Ms. Cotugno was too embarrassed to ask any follow up questions about the communication from Defendants, so she simply said "okay, Doctor, I'll get it handled, thank you," and then got into her car and left for work. Ms. Cotugno does not know how many times the Defendants contacted the doctor, or how many other third parties the Defendants may have contacted.

25.     Roughly one week after this incident, Ms. Cotugno ran into the doctor again and apologized for the disruption caused by the communication he received from Defendants. She again kept her conversation with the doctor brief on account of her embarrassment about Defendants' communication with the doctor.

26.     Ms. Cotugno does not share a mailing address, physical address or telephone number with the doctor's residence or the office operating below her apartment.

### B.     The Underlying Fraudulent Judgment

27.     After learning of the Defendants' communication with the doctor, the Plaintiff researched the court case referenced in Defendants' collection letter and learned that U.S. Equities Corp. had been awarded a judgment against someone allegedly named Robyn Cotugno on March 17, 2009, in *U.S. Equities Corp v. Robyn Cotugno*, City Court of the City of Schenectady, County of Schenectady, Index No. CI03668-08, File No. 64114. Defendant Strumpf was counsel for U.S. Equities in this case.

28.     On or about July 17, 2008, Defendant U.S. Equities Corp., by and through

7

Defendant Strumpf, brought suit against someone allegedly named Robyn Cotugno for alleged non-payment of an alleged Maryland National Bank debt. This Complaint falsely claimed that Robyn Cotugno incurred a debt with Maryland National Bank, and refused to repay this debt first to Maryland National Bank and then to Defendant U.S. Equities Corp. This Complaint falsely stated that, "The plaintiff [U.S. Equities Corp.] has made demand but the defendant(s) [Robyn Cotugno] refused to pay and continues to refuse to pay. *See* **Exhibit 1**. This allegation is false because the Plaintiff in this case — Ms. Cotugno — never received any demand for payment from either Maryland National Bank or any of the Defendants in this matter.

29. Defendant Strumpf also filed an Affidavit of Service with the City Court of the City of Schenectady stating that a process server named David B. Warshall served the collection lawsuit on October 14, 2008, by affixing the summons and complaint to the door of the residence at 1221 Sandra Lane, Schenectady, New York, 12303. *See* **Exhibit 2**. However, the Plaintiff in this case — Ms. Cotugno — was never served with a summons and complaint relating to the collection lawsuit and she never resided at 1221 Sandra Court, Schenectady, NY 12303. Defendants had no reasonable basis to believe that Plaintiff in this case resided at 1221 Sandra Court, Schenectady, NY 12303.

30. On February 17, 2009, Defendants filed an Affidavit of Facts in Support of Judgment signed by U.S. Equities Corp. "Accounts Manager" Wing Lam, which states that Robyn Cotugno defaulted on a Maryland National Bank Account, and that U.S. Equities Corp. had mailed Robyn Cotugno an accounting of that debt on October 29, 2008. *See* **Exhibit 3**. Neither of those statements are true, as the Plaintiff in this case — Ms. Cotugno — never owned or defaulted on a Maryland National Bank account, nor did

she ever receive any statements whatsoever regarding such an account, from the Defendants or otherwise.

31.   Wing Lam's Affidavit of Facts in Support of Judgment was notarized by Defendant Strumpf.

32.   On February 20, 2009, Defendant Strumpf filed an Attorney's Affirmation in the City Court for the City of Schenectady stating that she mailed a Notice of Default to Ms. Cotugno on October 29, 2008, at 1221 Sandra Court, Schenectady, NY 12303. *See* **Exhibit 4**. Ms. Cotugno never received this Notice of Default, and never resided at 1221 Sandra Court, Schenectady, NY 12303.

33.   The Defendants carried out service at an address unrelated to Ms. Cotugno in order to induce a court to enter a default judgment against Ms. Cotugno without her knowledge. Based upon Defendants' collection lawsuit Complaint, Affidavit of Service, Affidavit of Facts in Support of Judgment, and Notice of Default, the City Court of the City of Schenectady, on February 20, 2009, entered judgment against Robyn Cotugno in the total amount of $1,937.57.

34.   On July 7, 2016, the Plaintiff in this case mailed Strumpf a Demand for Verification of debt pursuant to 15 U.S.C 1692g. As of the date of this Complaint Ms. Cotugno has not received a response to this demand.

35.   Defendants' communication with the doctor made the Plaintiff feel embarrassed because she does not have any sort of relationship with the doctor, and Defendants disclosed personal information about her to him. At the time this communication occurred, the Plaintiff had no knowledge that a judgment had been entered against her years before, and it upset her to learn this information from an

unrelated third party who seemed to have more information than she was given by Defendants. The Plaintiff is further worried because she does not know how many times Defendants contacted the doctor, or how many other third parties it has communicated with regarding her alleged debt. The Plaintiff is also nervous that Defendants will contact other third parties in reference to this alleged debt. This upsets the Plaintiff because she does not want other people to know her personal financial information.

36. After the Plaintiff discovered that Defendants had communicated with the doctor, the Plaintiff became embarrassed and humiliated.

37. Defendants' actions also caused Ms. Cotugno harm to her reputation in her community generally, and specifically in the apartment building where she resides.

38. After learning of the judgment Defendants caused to be entered against her and Defendants' communications with the doctor, Ms. Cotugno also experienced an increased level of stress, leading to a flare up of her dyshidrotic eczema. Due to this flare up, blisters have developed on Ms. Cotugno's hands, causing joint pain and severe itchiness.

**COUNT I**
**Violation of the Fair Debt Collection Practices Act**

39. Ms. Cotugno hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

40. Upon information and belief, the subject debt is a "debt" as that term is defined by 15 U.S.C. § 1692a(5), as it allegedly arose out of a transaction for money, service or property that was primarily for personal, family and/or household purposes.

41. In its attempts to collect the subject debt Defendants materially violated FDCPA § 1692b because it communicated with a person other than Ms. Cotugno and

disclosed that the Plaintiff allegedly owed a debt.

42. In its attempts to collect the subject debt Defendants materially violated FDCPA § 1692c(b) because they communicated with a third party that is unrelated to Ms. Cotugno in connection with the collection of the subject debt.

43. In its attempts to collect the subject debt the Defendants materially violated FDCPA § 1692e(2) because they falsely represented the legal status of the subject debt.

44. Defendants' attempts to collect the subject debt, which arises from an unlawfully obtained judgment against Ms. Cotugno constitutes the employment of unfair means to collect a debt, in violation of FDCPA § 1692f.

45. Defendants materially violated FDCPA §§ 1692d, 1692e, and 1692f by filing sworn pleadings and affidavits containing false statements when they knew or should have known that there was no legal and factual basis for entering a default judgment against Ms. Cotugno, and for failing to conduct due diligence required under New York law.

46. As a direct consequence of the Defendants' acts, practices, and conduct, the Plaintiff became embarrassed, nervous, worried, upset, and concerned about the potential for future contact revealing information regarding her personal financial situation to her neighbors and other acquaintances.

47. Pursuant to FDCPA § 1692k Plaintiff is entitled to statutory damages and actual damages for her humiliation and embarrassment frustration and aggravation, as well as costs and reasonable attorneys' fees.

## COUNT II
### Violation of New York General Business Law § 349

48. Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

49. The New York General Business Law § 349 ("NYGBL") declares unlawful deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the State of New York.

50. Defendants' conduct complained of in this complaint occurred during, and in furtherance of, Defendants' for-profit business enterprise of pursuing consumers for alleged defaulted debt obligations owed to another.

51. At all times relevant to this complaint, Defendants' deceptive acts and practices that gave rise to her complaint occurred while Defendants conducted their business of collecting consumer debts.

52. Defendants' acts and practices have been directed entirely at consumers. Defendants' acts and practices have a broad impact on New York consumers and New York courts.

53. Defendants' collection acts are part of a recurring practice against a large number of consumers in furtherance of their business model of increasing debt volume while decreasing the costs of each case, thus enhancing profitability.

54. Ms. Cotugno, her neighbor (herein referred to as "the doctor"), and the City Court for the City of Schenectady were all misled by Defendants' conduct.

55. Defendants' illegal collection practices have the capacity and tendency to deceive and mislead a significant percentage of consumers in a material way because they deprive consumers of state and federal rights and protections. These acts

contribute to an increasing number of personal bankruptcies, and lead to marital instability and job loss, all of which are significant social concerns that applicable federal and state consumer protection laws were designed to prevent.

56. The acts and omissions complained of in this complaint under the preceding cause of action amount to "deceptive acts and practices" as defined under NYGBL § 349.

57. Some or all of the FDCPA violations alleged in this complaint amount to *per se* violations of NYGBL § 349.

58. As a result of Defendants' deceptive acts and practices, Ms. Cotugno suffered actual damages, including embarrassment, humiliation, anxiety, and an increased level of stress, leading to a flare up of her dyshidrotic eczema.

59. Defendants' violations of NYGBL § 349 were willful violations because the Defendant knew, or should have known that Ms. Cotugno was never obligated on the subject debt, and never resided at the address at which Defendants served Ms. Cotugno, yet still signed false affidavits in order to obtain default judgment against Ms. Cotugno. Defendants also knew or should have known that the doctor residing and working in Ms. Cotugno's apartment building had no legitimate interest in the alleged debt, but disclosed the alleged debt and damaged Ms. Cotugno's reputation anyway.

60. As a result of these violations of NYGBL § 349, Ms. Cotugno is entitled to an injunction barring Defendants from engaging in deceptive acts and practices and to recover actual damages, three times the actual damages up to $1,000, costs, and reasonable attorneys' fees pursuant to NYGBL § 349(h).

## COUNT III
## Libel

61. Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

62. Defendants are in the business of attempting to collect debts. Defendants caused a public record of the outcome of their work and it is expected that this information will be used in legal pleadings, affidavits, judgments, public records, and credit reporting agencies. It is not only foreseeable—but intended and expected—that the Defendants place their work into the hands of debt collectors, employers, marshals, and sheriffs who can and do cause significant harm.

63. The judgment Defendants' caused to be entered against Ms. Cotugno is a public record, and all pleadings filed in *U.S. Equities Corp v. Robyn Cotugno*, City Court of the City of Schenectady, County of Schenectady, Index No. CI03668-08, File No. 64114 are public records.

64. The Complaint, Affidavit of Service, Affidavit of Facts in Support of Judgment, and Notice of Default each contain numerous false statements, the most harmful of which is that Ms. Cotugno defaulted on a debt.

65. The Defendants' intentional and/or reckless proliferation of a lawsuit and alleged judgment against Ms. Cotugno exposed her to contempt, ridicule, and disgrace.

66. The Defendants' extreme legal delinquencies in the carrying out of collection activities rendered all false statements unprivileged.

67. The Defendants' false statements were intentional and designed to deceive Ms. Cotugno and the City Court for the City of Schenectady.

68. Defendants' false statements were defamatory because the unfair and

untrue public records produced and published by Defendants cause the average person to form an unsavory opinion of Ms. Cotugno, thus disparaging her character.

69. Ms. Cotugno was a respected member of her community who works two jobs—one as a courier and one as a real estate agent—and has never had a judgment entered against her.

70. Ms. Cotugno's reputation has been irreversibly impugned and damaged.

71. As a direct and proximate result of the Defendants' conduct, Ms. Cotugno has suffered damages, and Defendants are jointly and severally liable for said damages to be proven at trial for actual and special damages alleged herein, and attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests the following relief:

a. A judgment for actual damages relating to Plaintiff's embarrassment and humiliation pursuant to pursuant to 15 U.S.C. § 1692k(a)(1), in an amount currently estimated to be in excess of $75,000.00;

b. A judgment for statutory damages required by to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00;

c. A judgment awarding Plaintiff her costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d. An order for such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of her claims in this action.

Dated: July 21, 2016                              Respectfully Submitted,


                                                    */s/ E. David Hoskins*
                                                    E. David Hoskins, Esq., 516554
                                                    THE LAW OFFICES OF E. DAVID HOSKINS, LLC
                                                    16 East Lombard Street, Suite 400
                                                    Baltimore, Maryland 21202
                                                    (410) 662-6500 (Tel.)
                                                    *davidhoskins@hoskinslaw.com*


Albany Office:

90 State Street, Ste. 700
Albany, New York 12207
(518) 935-2672